A95A1324. NORTHWEST GEORGIA HEALTH SYSTEM, INC. et al. v. TIMES-JOURNAL, INC.
(461 SE2d 297)

McMURRAY, Presiding Judge.

Times-Journal, Inc. ("Times-Journal"), publisher of *The Marietta Daily Journal*, filed a "Verified Complaint for Injunctive and Declaratory Relief" against Northwest Georgia Health System, Inc. ("Northwest"), Promina Health System, Inc. ("Promina"), and others, alleging that Times-Journal has "repeatedly requested access to the meetings and records of Northwest and Promina[; that although] Northwest and Promina have provided Times-Journal, Inc. with access to certain documents, Northwest and Promina have taken the position that they are not subject to the provisions of the Open Meetings Act [OCGA § 50-14-1 et seq.] and the Open Records Act [OCGA § 50-18-70 et seq.], and, as a result, Times-Journal, Inc. and the public have not been given the access to records and meetings as required by law." In addition to demanding a declaration that Northwest and Promina "are subject to the provisions . . ." of these laws,

Times-Journal sought mandatory injunctive relief; a declaration that any action taken at a meeting not in compliance with the Open Meetings Act be "null and void"; and reasonable attorney fees incurred in prosecuting this action. Northwest and Promina, in their joint answer, contended that the "Sunshine Laws are not applicable to them, [but averred that] both Northwest and Promina have nevertheless fully complied with [Times-Journal's] requests for records, opened their meetings to the public, and den[ied] that there is currently any outstanding request for records with which they have not complied." In a supplemental responsive pleading, Northwest and Promina admitted that Promina is the sole member of Northwest and further admitted the authenticity of certain exhibits attached to the amended complaint. These exhibits include the amended bylaws of Northwest; a "Pre-Merger Notification and Report Form" filed by Northwest with the Federal Trade Commission; a letter of intent, contemplating Promina's "common control" of certain affiliated medical facilities; and a proposed affiliation agreement dated September 26, 1994.

After discovery, Times-Journal moved for a partial summary judgment declaring that defendants Northwest and Promina are subject to the Georgia Open Records Act, OCGA § 50-18-70 et seq., and the Georgia Open Meetings Act, OCGA § 50-14-1 et seq. Northwest and Promina opposed this motion and made their own motion for summary judgment as to "all counts of the Plaintiff's Verified Complaint for Injunctive and Declaratory Relief and all counts of the Plaintiff's First Amended Verified Complaint for Injunctive and Declaratory Relief. . . ." The following material facts are undisputed: Northwest is a "private, nonprofit Georgia corporation which resulted from a reorganization and merger of two private, nonprofit Georgia corporations, Cobb Health Services, Inc. and Kennestone Health Services, Inc." According to its bylaws, Northwest was organized "for the benefit of, to perform the functions of, or to carry out the purposes of: the Cobb County Kennestone Hospital Authority," the Hospital Authority of Cobb County, the Hospital Authority of Douglas County, the Paulding County Hospital Authority, and the Hospital Authority of Cherokee County, as well as Cobb Hospital, Inc.; Douglas Hospital, Inc.; Kennestone Hospital, Inc.; Kennestone Hospital at Windy Hill, Inc.; Paulding Medical Center, Inc.; and R. T. Jones Hospital, Inc., described in the bylaws as subsidiary hospital corporations which are also Georgia nonprofit corporations. Defendant Promina, also a private, nonprofit Georgia corporation, "is the sole member of Northwest" and is characterized by defendants as a holding company which is the parent corporation of Northwest. Members of the "Board of Trustees of Northwest are elected by the Board of Trustees of Northwest and approved by the Board of Trustees of Promina. . . ." Northwest "does not receive a direct allocation of any tax funds from

the governing authority of any agency[ . . .; however,] county tax funds are paid to [certain] Hospital Subsidiaries [of Northwest] to partially offset the provision of indigent care." This reimbursement for providing indigent care was shown to amount to less than two percent of revenues from all sources. Seven members of the Board of Trustees of Northwest are "also members of five different hospital authorities located in Cobb, Douglas, Paulding, and Cherokee Counties[, representing] the Hospital Authority of Cobb County, Hospital Authority of Douglas County, Cobb County Kennestone Hospital Authority, Hospital Authority of Cherokee County, Georgia[,] and Paulding County Hospital Authority." As authorized by OCGA § 31-7-75 (7), the Hospital Authority of Cobb County entered into a 40-year lease and assignment of all hospital authority assets to Cobb Hospital, Inc., one of the subsidiary hospital corporations of Northwest. In return for "One Dollar ($1.00) in hand, plus other good and valuable consideration," the subsidiary hospital corporation would undertake operation of Cobb General Hospital for the benefit of the general public. This includes providing emergency care and "all of the indigent care obligations of [the Hospital Authority of Cobb County]." Similar 40-year leases were entered into whereby hospital subsidiary corporations of Northwest would take an assignment of hospital authority assets to operate Kennestone Hospital and Kennestone Hospital at Windy Hill.

The trial court granted the motion of Times-Journal and denied that of Northwest and Promina. From the summary judgment declaring that Northwest and Promina "are subject to the provisions of the Georgia Open Records Act, O.C.G.A. § 50-18-70, et seq. and the Georgia Open Meetings Act, O.C.G.A. § 50-14-1, et seq.," this direct appeal followed. *Held*:

1. Northwest and Promina enumerate as error the grant of Times-Journal's motion for summary judgment and the denial of their opposing motion. Article 4 of Title 50, Chapter 18 is captioned: INSPECTION OF PUBLIC RECORDS. "The first question in an Open Records Act suit is whether the requested records are 'public records.' *Napper v. Ga. Television Co.*, 257 Ga. 156, 160 (356 SE2d 640) (1987)." *Clayton County Hosp. Auth. v. Webb*, 208 Ga. App. 91, 93 (1) (430 SE2d 89).

OCGA § 50-18-70 defines a "public record" generally to mean "all documents, papers, letters, maps, books, tapes, photographs, computer based or generated information, or similar material prepared and maintained or received in the course of the operation of a public office or agency. . . . As used in this article, the term 'agency' or 'public agency' or 'public office' shall have the same meaning and application as provided for in the definition of the term 'agency' in paragraph (1) of subsection (a) of Code Section 50-14-1. . . ." OCGA

§ 50-14-1 (a) (1) (E), in turn, defines an "Agency" to include: "Any nonprofit organization to which there is a direct allocation of tax funds made by the governing authority of any agency as defined in this paragraph and which allocation constitutes more than 33 1/3 percent of the funds from all sources of such organization; provided, however, this subparagraph shall not include hospitals, nursing homes, dispensers of pharmaceutical products, or any other type organization, person, or firm furnishing medical or health services to a citizen for which they receive reimbursement from the state whether directly or indirectly; nor shall this term include a subagency or affiliate of such a nonprofit organization from or through which the allocation of tax funds is made." Northwest and Promina contend that subparagraph (E) of this Code section is "the controlling definition of 'agency' in this case," because it expressly refers to any "nonprofit" organization. They argue that neither entity is a public agency, since Northwest and Promina as private, nonprofit corporations, do not receive the threshold amount of tax dollars as a percentage of operating revenue. Therefore, they cannot be made subject to the Sunshine Laws. Conceding the factual premise that neither Northwest nor Promina receives substantial support in tax dollars, we do not agree with Northwest and Promina that *only* those private, nonprofit corporations which meet that tax-support test must comply with the Open Records Act and the Open Meetings Act. Rather, we interpret this subparagraph to apply to *all* nonprofit organizations which receive substantial tax-based revenue. Such an interpretation does not mean, however, that this subparagraph is the exclusive authority for subjecting otherwise private, nonprofit organizations to the requirements of the Sunshine Laws.

"All public records of hospital authorities shall be subject to this article except for those otherwise excepted by this article or any other provision of law." OCGA § 50-18-72 (c) (1). " 'Public records' shall *also* mean such items received or maintained by a *private* person or entity on behalf of a public office or agency which are not otherwise subject to protection from disclosure. Provided, further, this Code section shall be construed to disallow an agency's placing or causing such items to be placed in the hands of a private person or entity for the purpose of avoiding disclosure." (Emphasis supplied.) OCGA § 50-18-70 (a). In *Red & Black Publishing Co. v. Bd. of Regents*, 262 Ga. 848, 852 (3), 853 (3) (b), 854 (427 SE2d 257), the Supreme Court of Georgia determined that an entity to which a public agency had delegated its official responsibilities and authority was the vehicle by which the agency carried out its responsibilities and held that the student Organization Court of the University of Georgia was subject to the Open Meetings Act even though that entity did "not fit within the literal language of the Act. . . ." In *Jersawitz v. Fortson*, 213 Ga.

App. 796, 798 (1), 799 (446 SE2d 206), this Court applied *Red & Black Publishing Co. v. Bd. of Regents*, 262 Ga. 848, 852 (3), supra, and held that the "Olympic Task Force Selection Committee[, . . .] formed with the knowledge and approval of [the Atlanta Housing Authority], . . . was a vehicle for [that] agency to carry out its responsibilities . . . [and therefore was subject to] the Open Meetings Act. [Cit.]" In the case sub judice, Northwest's subsidiary hospital corporations contractually agreed to operate public hospital authority assets for the public good and Northwest's statement of corporate purpose is (in part) to operate those assets for the benefit of and performing the function of the several public hospital authorities. Without question, these private, nonprofit corporations became the vehicle through which the public hospital authorities carried out their official responsibilities. Consequently, despite the private, nonprofit status of defendants Northwest and Promina and their subsidiary hospital corporations, the trial court in the case sub judice was authorized to conclude on the facts before it that Northwest and Promina, as vehicles for public agencies, were "subject to the [Open Meetings] Act, and that the requested documents were 'public records' under the [Open Records] Act. [Cits.]" *Clayton County Hosp. Auth. v. Webb*, 208 Ga. App. 91, 93 (1), 95, supra.

2. The remaining contentions have been considered and are found to be without merit.

*Judgment affirmed. Andrews and Blackburn, JJ., concur.*

DECIDED AUGUST 14, 1995.

*Brock & Clay, D. Glenn Brock, King & Spalding, Frank C. Jones, Richard L. Shackleford, Glen A. Reed*, for appellants.

*Long, Aldridge & Norman, F. T. Davis, Jr., Bruce P. Brown, David Balser, Ann-Marie N. McGaughey*, for appellee.

*Michael J. Bowers, Attorney General, Stephanie B. Manis, Deputy Attorney General, John E. Hennelly, Assistant Attorney General, Dow, Lohnes & Albertson, Peter C. Canfield, James W. Kimmell, Jr., Powell, Goldstein, Frazer & Murphy, James C. Rawls, Sara K. Sledge, Heyman & Sizemore, William H. Major, William B. Brown, Alston & Bird, Jack S. Schroder, Jr., Lance P. Dunnings, Langley & Lee, C. Richard Langley, Donald W. Lee, Parker, Hudson, Rainer & Dobbs, John H. Parker, Jr., Leo E. Reichert, Oliver, Duckworth, Sparger & Winkle, David P. Winkle, Layfield, Rothschild & Morgan, Jerome M. Rothschild*, amici curiae.