A97A1045. DEPARTMENT OF HUMAN RESOURCES
v. NORTHEAST GEORGIA PRIMARY CARE, INC.
(491 SE2d 201)

BEASLEY, Judge.

Before issuing a license to a "government or governmental agency" for a new ambulance service, OCGA § 31-11-32 (d) requires the license officer for the Department of Human Resources (DHR) to establish that, due to inadequate private service, the public's convenience and necessity require the proposed ambulance service. The question in this case is whether a private non-profit corporation which discharges the functions of a hospital authority is a government or governmental agency within the meaning of the above statute.

Northeast Georgia Primary Care, Inc. (Primary Care), a Georgia nonprofit corporation, submitted an application to the DHR for a license to operate an ambulance service in Hall County. The license officer concluded that Primary Care is a governmental agency, merely the vehicle through which the Hospital Authority of Hall County and the City of Gainesville (the Hospital Authority) seeks to operate the proposed ambulance service. Finding that Primary Care did not prove that private ambulance service in the county is inadequate, DHR denied its application. Primary Care appealed to the superior court under OCGA § 31-5-3 (3). The court reversed. We granted DHR's application for discretionary appeal.

Primary Care's sole member is Northeast Georgia Health Services, Inc. (Health Services), likewise a Georgia nonprofit corporation. Health Services is a holding company controlling various for-profit and non-profit corporate entities (the Health Services group). The non-profit corporations include Primary Care; Northeast Georgia Medical Center, Inc. (Medical Center); and Northeast Georgia Health Resources, Inc. (Health Resources).

The Hospital Authority owns the Medical Center, an acute-care regional hospital operated on a non-profit basis to serve the health

needs of the community, including the indigent. Because of various changes in the field of health-care delivery,[1] the Hospital Authority determined that the health needs of the community would be best served by leasing the hospital and its related facilities along with an assignment of other assets to a non-profit corporation.

As a result, a corporate reorganization plan was developed resulting in the formation in 1986 of Health Services, Medical Center, and Health Resources. Likewise in 1986, a lease agreement was entered into between the Hospital Authority and Medical Center, which manages and operates most of the inpatient activities of the Health Services Group. Health Resources, which is primarily responsible for the outpatient functions of the Health Services Group, is a sublessee of certain assets under the lease agreement. The function of Primary Care, which was incorporated in 1993, is to employ and manage primary care physicians in a primary care network maintained in the Northeast Georgia area by the Health Services Group. It has a management contract for the operation of outpatient primary care facilities owned by Health Resources.

In the 1986 lease agreement, Medical Center agreed to provide services to the indigent sick of Hall County, to operate emergency care facilities available to all citizens regardless of ability to pay, and to continue to participate in Medicaid and Medicare programs. In its application for a license to operate the ambulance service, Primary Care stated that indigent patients would constitute a substantial portion of its transport patients.

Both Health Services' and Medical Center's by-laws state that two members of their regular board of trustees shall be serving members of the governing body of the Hospital Authority if two such members are willing and able to serve. No members of the Hospital Authority are on the board of trustees of Primary Care.

1. The superior court reversed the DHR's denial of Primary Care's license application, based on its conclusion that under *Thomas v. Hosp. Auth. of Clarke County*, 264 Ga. 40 (440 SE2d 195) (1994), the Hospital Authority is not a government agency and therefore Primary Care cannot be considered one either. Since the question before

---

[1] As stated in a lease agreement between the Hospital Authority and Medical Center, reviewed infra, these changes include: "(i) Changing reimbursement schemes pursuant to which large purchasers of health care are actively seeking ways to decrease their health care expenditures creating a need for efficiency in order to assure survival; (ii) Increasing population over age 65 creating a greater demand for health care services; (iii) Changing technologies being developed to provide treatment in a less traumatic way but at some times prohibitive costs requiring the balancing of the cost of care with the quality of care; (iv) A physician oversupply creating greater competitiveness; (v) Limited access to equity capital because [the Hospital Authority] is prohibited from entering profit making joint ventures; (vi) Increasing costs for care for the poor."

us (whether Primary Care is a government agency) involves an application of undisputed facts, the standard of review is de novo. See *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474) (1994).

At the outset, DHR asserts that the superior court did not have jurisdiction to consider Primary Care's argument that a hospital authority is not a governmental agency because Primary Care never raised this issue before the department. See *Ga. Power Co. v. Ga. Pub. Svc. Comm.*, 196 Ga. App. 572, 573 (1) (396 SE2d 562) (1990) (no objection to any order or decision of any agency shall be considered by the court upon petition for review unless such objection has been urged before the agency). But DHR recognizes that the question of whether a hospital authority is a government agency must be considered in order to determine whether an entity such as Primary Care is a government agency. The former question will be addressed insofar as necessary to resolve the latter.

In *Thomas*, supra, the plaintiff sued a county hospital authority seeking damages for permanent injury sustained in a slip and fall. The question was whether the action was barred under Art. I, Sec. II, Par. IX (e) of the Georgia Constitution under which "sovereign immunity extends to the state and all of its departments and agencies." The Court held that the action was not so barred, basing its decision upon both legal and policy considerations.

In Division 1 of its opinion, the Court arrived at the legal conclusion that a hospital authority, though a governmental instrumentality, is not an agency or department of either the state or county because it is a public, non-profit corporation. See *Richmond County Hosp. Auth. v. McLain*, 112 Ga. App. 209 (144 SE2d 565) (1965). A hospital authority is a government instrumentality because it is created by local governmental units for the purpose of exercising, among other things, public and essential governmental functions, to wit: furnishing medical care and hospitalization for the indigent. See OCGA § 31-7-75; *Knowles v. Housing Auth. &c. of Columbus*, 94 Ga. App. 182 (94 SE2d 55) (1956), rev'd on other grounds, 212 Ga. 729 (95 SE2d 659) (1956).

In Division 2, the court in *Thomas* delineated the policy considerations in support of its determination that a hospital authority is not entitled to sovereign immunity. The court posited that "the function of a hospital [authority] is not, in essence, a governmental function." 264 Ga. at 43, n. 6. It stated: "The very functions performed by the . . . Hospital Authority are performed by private hospitals and the [Hospital] Authority is in direct competition with these private hospitals for patients. If an instrumentality of the government chooses to enter an area of business ordinarily carried on by private enterprise, i.e., engage in a function that is not 'governmental,' there is no reason why it should not be charged with the same responsibili-

ties and liabilities borne by a private corporation." (Footnote omitted.) 264 Ga. at 43. Finally, the court in *Thomas* observed that one purpose of sovereign immunity is to preserve the protection of the public purse and that a hospital authority is a public corporation whose operations have little if any impact on the taxpayers. Id. at 43-44.

2. *Crosby v. Hosp. Auth. of Valdosta & Lowndes County*, 93 F3d 1515 (11th Cir. 1996), relied on by DHR, supports the proposition that whether an instrumentality such as a hospital authority is a "political subdivision" or "agency" or "department" of the state depends on the context in which the quoted terms are used.

*Crosby* involved the state action immunity doctrine under which states are immune from federal antitrust law for their actions as sovereign. Id. A political subdivision of the state is likewise immune if it acted pursuant to clearly-articulated and affirmatively-expressed state policy. Id. at 1521-1522. Even private parties are entitled to such immunity, if it is shown both that the challenged restraint was clearly articulated and affirmatively expressed as state policy and that the policy was actively supervised by the state. Id. at 1522.

*Crosby* held that because a state hospital authority is a government instrumentality, for state action immunity purposes it should be evaluated as a political subdivision of the state rather than as a private actor. Id. at 1522-1526; see also *Cox Enterprises v. Carroll City/County Hosp. Auth.*, 247 Ga. 39 (273 SE2d 841) (1981) (a hospital authority, as a government entity, is barred from prosecuting a libel action); *Martin v. Hosp. Auth. of Clarke County*, 264 Ga. 626 (449 SE2d 827) (1994) (a hospital authority, as a government entity, cannot be held liable for punitive damages). Clearly, a hospital authority is in no way a "political subdivision" of the state, within the meaning of that concept under Georgia law. See *Richmond County Hosp. Auth. v. McLain*, supra.

3. The question in this case is whether Primary Care is a government or governmental agency within the meaning of a statute prohibiting a government-operated ambulance service unless private service is inadequate.

(a) One asserted purpose of the statute is effectuation of the general rule — espoused in *Keen v. Mayor &c. of Waycross*, 101 Ga. 588 (29 SE 42) (1897), and applied in *Atlanta Metro Assoc. Plumbing Contractors v. Maloof*, 259 Ga. 777 (386 SE2d 338) (1990) — prohibiting a local governmental unit from engaging in an occupation usually pursued by private enterprise. *Keen* and *Maloof* are inapposite. They involved government-operated businesses that were "purely private and entirely unconnected with a proper administration of . . . gov-

ernmental duties." *Keen,* supra at 590 (1).[2] The ambulance service proposed by Primary Care, which would serve both paying and indigent patients, is connected with the administration of a public duty. See *Knowles,* supra. The concern expressed in *Keen* was that conduct of the business amounted to a misappropriation of government funds. Id. at 593-594 (3). That concern is not present here.

(b) The other asserted purpose for limiting competition between the governmental and private sectors is that a government agency which provides a service also provided by private enterprise has unfair competitive advantages over the private entities with which it competes.

A hospital authority does have certain competitive advantages, such as the ability to issue tax-free debt instruments, eligibility for a certain amount of public funding, a governmental exemption from taxation, and grant of the power of eminent domain. But it also has one major competitive disadvantage, i.e., the obligation to provide indigent medical care. As a private corporation, Primary Care is an entity separate and distinct from the Hospital Authority, *Richmond County Hosp. Auth. v. Richmond County,* 255 Ga. 183, 186 (1) (a) (336 SE2d 562) (1985), and does not have the power of eminent domain, although under the 1986 lease agreement the Hospital Authority agreed to exercise its power of eminent domain on behalf of Medical Center. Nor does Primary Care have the ability to issue tax-free debt instruments. And it is not publicly funded. It is exempt from the payment of taxes by reason of its status as a charitable corporation rather than as a government entity. It is part of a corporate group that has agreed to assume indigent care obligations while competing with for-profit companies which have assumed none. OCGA § 31-11-32 (d) serves to limit competition between government and private enterprise, and the DHR acknowledges that the corporations within the Hospital Services group were created for the purpose of "privatizing" the operations of the Hospital Authority.

We conclude that Primary Care is not a government or governmental agency within the meaning of the statute.

4. *Red & Black Publishing Co. v. Bd. of Regents,* 262 Ga. 848 (427 SE2d 257) (1993), and *Northwest Ga. Health System v. Times-Journal,* 218 Ga. App. 336, 338 (1) (461 SE2d 297) (1995), relied upon by the DHR, are distinguishable. These cases hold that an entity or entities to which public agencies have delegated their official responsibilities and authority are subject to the Open Records Act (OCGA § 50-18-70 et seq.) and the Open Meetings Act (OCGA § 50-14-1 et

---

[2] In *Keen,* the City of Waycross was engaging in a general plumbing business on private premises. In *Maloof,* DeKalb County offered sewer services on privately-owned sewer lines.

seq.). *Red & Black*, supra at 853-854 (3) (b); *Northwest Ga.*, supra at 339-340 (1).

·*Red & Black* involved the student Organization Court of the University of Georgia, which had authority to hear and adjudicate cases involving violations of certain University rules and regulations. The Board of Regents delegated such authority to the University and, in turn, to the Organization Court. Like the present case, *Northwest Ga.* involved private, non-profit corporations which were the vehicle through which various public hospital authorities functioned. In the 1986 lease agreement, in the instant case, Medical Center agreed to hold public meetings and allow public access to its records to the same extent required of the Hospital Authority.

The two earlier case decisions are based on the applicability of the Open Records Act to items received or maintained by a private person or entity on behalf of a public office or agency (OCGA § 50-18-70 (a)) and to the principle that the Open Meetings Act "must be broadly construed to effect its remedial and protective purposes." *Atlanta Journal v. Hill*, 257 Ga. 398, 399 (359 SE2d 913) (1987); see *Hackworth v. Bd. of Ed. &c. of Atlanta*, 214 Ga. App. 17, 20 (1) (b) (447 SE2d 78) (1994). Application of OCGA § 31-11-32 (d) to a self-funded private corporation discharging both public and private functions would not effectuate its purpose.

*Judgment affirmed. McMurray, P. J., and Smith, J., concur.*

DECIDED AUGUST 12, 1997 —

*Michael J. Bowers, Attorney General, William C. Joy, Senior Assistant Attorney General, Kevin M. O'Connor, Assistant Attorney General*, for appellant.

*Whelchel & Dunlap, Madeline S. Wirt*, for appellee.

*Layfield, Rothschild & Morgan, Jerome M. Rothschild, King & Spalding, Richard L. Shackelford, Kristofer R. Schleicher*, amici curiae.