**INDIANA STATE BOARD OF ACCOUNTS and Charles Johnson, III, in his capacity as State Examiner, Appellants–Defendants,**

v.

**CONSOLIDATED HEALTH GROUP, INC., Appellee–Plaintiff.**

No. 29A02–9704–CV–223.

Court of Appeals of Indiana.

Oct. 6, 1998.

---

George T. Patton, Jr., Andrew M. McNeil, Bose McKinney & Evans, Indianapolis, for Appellants–Defendants.

David C. Campbell, Mary Beth Claus, Bingham Summers Welsh & Spilman, Brian K. Burke, Scott D. Himsel, Baker & Daniels Indianapolis, for Appellee–Plaintiff.

## OPINION

STATON, Judge.

This case arises out of the consolidation of Indiana University Hospitals ("IUH")[1] with Methodist Hospital. The two previously independent hospitals now operate under the name Clarian Health Partners, Inc.[2] Clarian is a private, nonprofit Indiana corporation that owns and operates the hospital assets formerly owned by Methodist and IUH. Prior to the consolidation, IUH were subject to open door laws, IND.CODE §§ 5–14–1.5–1 to –8, and to audit by the Indiana State Board of Accounts ("Board"), IND.CODE §§ 5–11–1–1 to –19–3, but Methodist was not. Upon cross-motions for summary judgment, Clarian was granted a declaratory judgment that it is not subject to audit by the Board.[3] The Board now appeals presenting two issues which we restate as:

I. Whether the trial court erred by not striking the affidavit of IUH's Chief Financial Officer.

II. Whether the trial court erred by concluding that Clarian is not subject to audit by the Board.

We affirm in part and reverse in part.

As noted above, this case comes to us on the grant of summary judgment in favor of Clarian. Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). The burden is on the moving party to prove there are no genuine issues of material fact, and he is entitled to judgment as a matter of law. Once the

---

1. IUH consists of Indiana University Hospital and Outpatient Center, a comprehensive adult teaching hospital, and the James Whitcomb Riley Hospital for Children, a comprehensive children's hospital.

2. This action was originally filed by Consolidated Health Group, Inc. which has since changed its name to Clarian Health Partners, Inc.

3. Clarian filed a declaratory judgment since it is the Board's position that if a party believes it is not subject to audit by the Board, that party must take initiative to resolve the issue or risk future liability for failing to comply with audit requirements.

movant has sustained this burden, the opponent must respond by setting forth specific facts showing a genuine issue for trial; he may not simply rest on the allegations of his pleadings. *Stephenson v. Ledbetter,* 596 N.E.2d 1369, 1371 (Ind.1992). At the time of filing the motion or response, a party shall designate to the court all parts of pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and any other matters on which it relies for purposes of the motion. T.R. 56(C).

■■■ In this case, the trial court entered specific findings of fact and conclusions of law thereon. Specific findings and conclusions are neither required nor prohibited in the summary judgment context. *Althaus v. Evansville Courier Co.,* 615 N.E.2d 441, 444 (Ind.Ct.App.1993), *reh. denied.* Although specific findings aid appellate review, they are not binding on this court. *Id.* Instead, when reviewing an entry of summary judgment, we stand in the shoes of the trial court. We do not weigh evidence, but will consider the facts in the light most favorable to the nonmoving party. *Reed v. Luzny,* 627 N.E.2d 1362, 1363 (Ind.Ct.App.1994), *reh. denied, trans. denied.* We may sustain a summary judgment upon any theory supported by the designated materials. T.R. 56(C).

## I.

### *Affidavit*

We first address the Board's contention that the affidavit of IUH's Chief Financial Officer is inadmissible since it is not based upon personal knowledge. The Board correctly notes that an affidavit must be made on personal knowledge to be admissible. Ind. Trial Rule 56(E); *Rubin v. Johnson,* 550 N.E.2d 324, 327 (Ind.Ct.App.1990), *trans. denied.* However, after reviewing the affidavit, we do not reach the merits of this argument. The affidavit generally describes the process undertaken by the Trustees of Indiana University in reaching their decision to consolidate hospital operations with Methodist. The affidavit also details the current legislative, economic and business environment in which IUH operates in order to support the

proposition that consolidating with Methodist is a sound and legitimate business decision. As will become more apparent through the discussion of applicable law below, whether consolidating with Methodist is a good business decision for IUH's future is wholly irrelevant as to whether IUH continues to be subject to audit by the Board. Accordingly, we do not reach the merits of the Board's argument since the affidavit is irrelevant to the substantive issue presented on appeal.

## II.

### *Audit*

Initially, the parties do not even agree on the precise issue tried below and presented on appeal. The Board appeals claiming that, "The parties to the consolidation sought a declaration that, to the extent Indiana University Hospitals was part of [Clarian], they would not be subject to the open door laws." Brief of Appellants at 2. Clarian expresses shock and indignation at the Board's attempt to misrepresent the issue on appeal, and argues that appellate review has been waived since a party may not raise an issue on appeal not presented at trial. *See, e.g., Ramon v. Glenroy Const. Co.,* 609 N.E.2d 1123, 1127 n. 2 (Ind.Ct.App.1993), *trans. denied.* Clarian contends the actual issue is whether it is subject to audit[4] and that the Board purposefully misconstrues the issue as whether IUH is subject to audit: a response from Clarian to the "slight" by the Board which itself misconstrues the Board's position. The bottom line with the issue we are to address is as follows: (1) IUH was historically subject to audit by the Board and to open door laws; (2) Methodist was a private Indiana nonprofit corporation never subject to audit by the Board; (3) IUH and Methodist have consolidated to form Clarian; (4) it is the Board's position that the asset previously held by the Trustees of Indiana University and known as IUH is still subject to audit. Since Clarian is roughly half comprised of IUH, any audit of IUH would constitute an audit, at least in part, of Clarian. Thus, phrasing the issue loosely as whether IUH is subject to audit or, with more speci-

---

4. This is how Clarian styled the issue below when it filed the declaratory judgment.

ficity, as whether the part of Clarian composed of what was formerly an independent IUH[5] is subject to audit is of no moment. The focus of our inquiry is the same no matter how phrased, and the attempt to evade appellate review based on semantics fails.

■■■ The Board "shall examine all accounts and all financial affairs of every public office and officer, state office, state institution, and entity." IND.CODE § 5–11–1–9(a) (Supp.1996). The Board first contends that Clarian is subject to audit since it is an "entity" within IC 5–11–1–9(a). An " 'entity' means any provider of goods, services, or other benefits that is: (1) maintained in whole or in part at public expense; or (2) supported in whole or in part by appropriations or public funds or by taxation." IND. CODE § 5–11–1–16(e) (1993). Too, a private not-for-profit corporation can be considered an "entity" subject to audit if it is subsidized by the public. *See Indianapolis Convention & Visitors Assoc. v. Indianapolis Newspapers, Inc.*, 577 N.E.2d 208 (Ind.1991) [hereinafter *ICVA* ]; *State Bd. of Accounts v. Indiana Univ. Found.*, 647 N.E.2d 342 (Ind. Ct.App.1995), *trans. denied* [hereinafter *IUF* ]. However, "[i]n situations involving a *quid pro quo*, that is, measured goods or services given in exchange for payment based on identifiable quantities of goods or services, a private entity would not be transformed into a public entity because it would not be maintained and supported by public funds." *ICVA,* 577 N.E.2d at 214.

The Board argues that Clarian is subject to audit since it was created, in part, by the transfer of substantially all of IUH's assets and the lease, for a nominal fee, of IUH's real property. The assets and real property have a net value of $312,079,908, which, according to the Board, results in a $312,079,-908 public subsidy in the creation of Clarian.[6] However, the Board's argument focuses only on the *quid* and ignores the *quo.* Clarian's board of directors now manages and operates the former Methodist and IUH facilities as a new unified hospital. Clarian has also assumed responsibility for all of IUH's known and unknown liabilities, and is responsible for all costs and liabilities arising from future hospital operations including utilities, taxes, insurance, casualty damages, maintenance, repair and other operating costs associated with running hospitals. Too, Clarian will not receive any appropriations from the State, and Clarian will engage its own employees who will not be public employees. Most importantly, Clarian will provide millions of dollars annually to the Trustees of Indiana University for the benefit of the School of Medicine. Although the precise annual contribution is subject to some uncertainty since it is based on a formula and is only projected for the first three years,[7] the Board admitted at the summary judgment hearing that, ignoring the time value of money, IUH will be "paid for" after approximately seven and one-half years.[8] Record at 288–89. Given

5. Methodist has been a private corporation never subject to audit by the Board, and the Board does not contend that the portion of Clarian composed of Methodist is subject to audit.

6. The creation and continuing sustenance of IUH is a long, complicated, and, based on the record before us, not entirely clear combination of public and private funding. Too, IUH has been self-sufficient for a number of years, relying solely on fees from patients and private donations. We recognize that there are plausible arguments to be made that IUH's $312 million net worth is not entirely composed of public money. However, we reach the same result even assuming *arguendo* that the entire $312 million is a public investment.

7. The actual consolidation agreement is not part of the record. The parties have gone to great lengths to prosecute this case while keeping the details of this transaction confidential so Clarian

will not find itself at a competitive disadvantage through public disclosure of its financial and contractual relationships. Constrained by our responsibilities to provide a useful analysis and an educational opinion to the Bar, we too have endeavored to disclose as little financial information as possible. As an aside, we commend the parties on their obvious cooperation which has allowed for meaningful judicial review while still addressing Clarian's confidentiality concerns.

8. Clarian has emphasized that we may not inquire into the adequacy of consideration exchanged in these contracts, citing *IUF,* 647 N.E.2d at 354. However, *IUF* relies on *Hamlin v. Steward,* 622 N.E.2d 535, 539 (Ind.Ct.App. 1993) for this proposition, a case not involving the issues associated with the Board auditing an alleged subsidized "entity." While we take no issue with this proposition as a general statement of contract law, an analysis of whether a private

that the Trustees and Clarian have entered into a ninety-nine year relationship, we conclude that the consolidation agreement is a classic example of the *quid pro quo* discussed in *ICVA* such that Clarian, to the extent it is comprised of IUH, is not an "entity" within the meaning of IC 5–11–1–16(e) and, therefore, not subject to audit by the Board.[9]

■ The fact that Clarian will be transferring money to the Trustees over a period of years instead of in one lump sum does not alter our conclusion. Rarely, if ever, are transactions of this magnitude accomplished with a single check. To hold otherwise would ignore the obligations Clarian has assumed under the contract, and could result in anomalous situations where similarly situated parties are treated differently by the Board depending upon whether payment is over time or not.

The purpose of the State Board of Accounts statute is to discover wrongdoing by any public officer to whom public funds are entrusted and to recover that portion of the funds for which the officer is liable by reason of his failure faithfully to discharge the duties of his trust prescribed by law. Board examination, in other words, is designed to ensure the safekeeping of funds held under a trust created by law.

*IUF*, 647 N.E.2d at 350 (citations omitted). This purpose is not served by auditing a private corporation which has obligated itself to provide fair consideration for an asset from a public officer who held the asset in trust for the State, whether payment is in a single lump sum or not. To the extent the public needs to ensure the proper safekeeping of its funds by public officers in such a situation, there is still access to the financial affairs of the public officer himself: in this case, the Trustees of Indiana University.

■ The Board next contends that Clarian is subject to audit since it is a "public

office." The Board shall examine all accounts and financial affairs of every public office. IC 5–11–1–9(a).

> For purposes of the [State Board of Accounts] statute, a "public office" is defined as "the office of any and every individual who for or on behalf of the state or any municipality or any public hospital holds, receives, disburses, or keeps the accounts of the receipts and disbursements of any public funds." IND.CODE § 5–11–1–16(c). Thus, a "public office" must: (1) hold, receive, disburse or keep; (2) public funds; (3) for or on behalf of the state.

*IUF*, 647 N.E.2d at 347. We agree with the trial court that Clarian, to the extent it consists of IUH, is not a "public office" since IUH no longer constitutes a public fund.

As noted by the Board, no case has yet considered whether a public asset, such as IUH, can constitute a public fund. We see little reason why an asset, such as a hospital, developed with public monies cannot constitute a "public fund" within the meaning of the State Board of Accounts statute. Indeed, Clarian does not even challenge this general proposition. However, to the extent the public has invested in IUH, it will be adequately compensated, per the discussion above, through Clarian's annual contributions to the Trustees for the benefit of the School of Medicine. Again, the Board's argument focuses only on the public's investment in IUH which originally made it a public fund, but ignores Clarian's future commitments to the Trustees under the consolidation agreement. On this point, we adopt Clarian's conclusion. "[W]hatever character the IUH assets had *before* the consolidation, they cannot be considered 'public funds' *after* a private entity, [Clarian], pays for and acquires them." Brief of Appellee at 25. Accordingly, we conclude Clarian is not a public office since IUH is no longer a public fund.[10]

corporation is being subsidized with public funds necessarily involves some level of inquiry into the amount of consideration.

9. We note that our conclusion has ramifications concerning the Public Records Act. The Public Records Act provides that any person may inspect or copy the public records of any public agency. IND.CODE § 5–14–3–3 (Supp.1995). A

"public agency" under the Public Records Act includes, *inter alia*, an entity subject to audit by the Board. IND.CODE § 5–14–3–2 (Supp.1995).

10. Since we have concluded that Clarian does not hold public funds, it is not necessary to address the Board's arguments that Clarian holds IUH on behalf of the State given IUH's alleged public character.

Although composed of two separate facilities, up to this point we have discussed IUH as a single entity. However, the James Whitcomb Riley Hospital for Children ("Riley") occupies a unique position in this analysis which we now address. Riley is, by legislative definition, a department of Indiana University. IND.CODE § 20–12–31–2 (1993). As a department of Indiana University, Riley is under the direction and control of the board of trustees. IND.CODE § 20–12–31–7 (1993). Accordingly, Riley is, by definition, to be held by the Trustees for the benefit of Indiana University, a state institution. IND. CODE § 20–12–23–2 (1993).

Given this statutory scheme, we conclude Clarian, to the extent it is composed of Riley, is subject to audit by the Board since Clarian is a "public office." As a department of Indiana University, we have little difficulty recognizing Riley as a public fund. Too, per the consolidation agreement, Clarian will hold or keep Riley since Clarian is now responsible for all aspects of managing the hospital. Finally, we can envision no other manner in which a private entity can hold or keep an entire legislatively defined department of Indiana University other than for or on behalf of the state: a conclusion mandated by the statutory scheme above. In essence, Clarian is acting in place of or on behalf of the Trustees of Indiana University with respect to this particular department, notwithstanding any consideration from Clarian. Our conclusion is further buttressed by foreign jurisdictions which have held in similar contexts that when a private entity acts on behalf of or in place of a public entity with statutory responsibilities to operate a hospital, that private entity is subject to public scrutiny. *See News–Journal Corp. v. Memorial Hospital–West Volusia, Inc.,* 695 So.2d 418 (Fla.Dist.Ct.App.1997), *rev. granted,* 700 So.2d 686 (Fla.1997) (private lessee acted on behalf of public authority charged with responsibility of creating and running hospital); *Northwest Georgia Health System, Inc. v. Times–Journal, Inc.,* 218 Ga.App. 336, 461 S.E.2d 297 (1995) (private nonprofit corporation was vehicle through which public authorities carried out their official hospital responsibilities). Accordingly, we hold that to the extent Clarian consists of Riley, Clarian will act as a "public office" within the meaning of IC 5–11–1–16(c) and that Clarian is subject to audit by the Board only to this extent.

Affirmed in part and reversed in part.

DARDEN and RUCKER, JJ., concur.

