MCFADDEN, Judge,
dissenting.
I respectfully dissent. Because the Authority has certain official, governmental responsibilities, and Northside is the vehicle through which the Authority discharges those responsibilities, and Northside entered the transactions described in the documents at issue in the course of its discharge of those responsibilities, I would hold that those documents were indeed prepared and maintained or received by Northside on behalf of the Authority. And I would therefore hold that those documents are subject to the Open Records Act.
The lease-transfer agreement, as a matter of law, cannot shield those documents from the Open Records Act. And as a matter of fact, it does not attempt to shield them.
So I would reverse the trial court’s holding that the records are not public records within the meaning of the Open Records Act. Consequently, I would reach two issues the majority does not. I would remand for the trial court to decide whether particular documents contain trade secrets and therefore fall within an exception to the Act. I would affirm the grant of the protective order.
1. Public records.
Hospital authorities “exercise public and essential governmental functions.” OCGA § 31-7-75. So there is no question that the Authority’s records are public records within the meaning of the Open Records Act. See Cox Enterprises v. Carroll City/County Hosp. Auth., 247 Ga. 39, 45 (273 SE2d 841) (1981); OCGA § 50-18-70.
The Authority has chosen to discharge its “governmental obligation to provide for the health of the people ... by the lease of the hospital” to Northside. Richmond County Hosp. Auth. v. Richmond County, 255 Ga. 183, 184 (1) (336 SE2d 562) (1985) (citation and punctuation omitted).
*859 (a) As a matter of law.
Whether the documents at issue are likewise public records is answered by our holding in Northwest Ga. Health System v. Times-Journal, 218 Ga. App. 336 (461 SE2d 297) (1995). In that case, we held that the trial court was authorized to conclude that certain private, nonprofit corporations were
the vehicle through which the public hospital authorities carried out their official responsibilities. Consequently, despite [their] private, nonprofit status [,] ... as vehicles for public agencies [they] were subject to the Open Meetings Act, and .. . documents [requested under the Open Records Act] were public records under the Open Records Act.
Id. at 340 (1) (citation and punctuation omitted). Because Northside is the vehicle through which the Authority carries out its official responsibilities and, as discussed below, the documents at issue concern Northside’s execution of that delegated responsibility, those documents are public records under the Open Records Act.
That holding in Northwest Ga. Health System has been approved by the General Assembly. In 1997 the General Assembly enacted OCGA § 14-3-305 to impose certain reporting and conflict-of-interest requirements on nonprofit corporations formed, created, or operated by or on behalf of a hospital authority. Subsection (e) of the statute provides:
Nothing in this Code section shall be deemed or construed to affect in any manner the provisions of Code Section 31-7-75.2 [an exemption in the Hospital Authorities Law to the Open Meetings Act and Open Records Act], Chapter 14of Title 50 [the Open Meetings Act], or Article 4 of Chapter 18 of Title 50 [the Open Records Act] or to change existing law as to whether such statutory provisions are applicable to nonprofits.
OCGA § 14-3-305 (e) (emphasis supplied). (The term “nonprofits” as used in that statute “means any corporation which is formed, created, or operated by or on behalf of a hospital authority.” OCGA § 14-3-305 (a).) Two years before OCGA § 14-3-305 was enacted, we held in Northwest Ga. Health System that the records of such nonprofit corporations were public records within the meaning of the Open Records Act. Northwest Ga. Health System, 218 Ga. App. 336. “All statutes are presumed to be enacted by the legislature with full knowledge of the existing condition of the law and with reference to *860 it.” Nuci Phillips Mem. Foundation v. Athens-Clarke County Bd. of Tax Assessors, 288 Ga. 380, 383 (1) (703 SE2d 648) (2010) (citation and punctuation omitted).
Our decision in Northwest Ga. Health System rested on undisputed facts. And, as the majority observes, the relevant facts in this case are largely undisputed as well. We conduct a de novo review of the application of the law to the undisputed facts. See Maddox v. Schrader, 268 Ga. 661, n. 3 (492 SE2d 521) (1997). Nothing in Northwest Ga. Health System, or any of the cases in its line, identifies any factors relevant here that would authorize a contrary result. See United HealthCare of Ga. v. Ga. Dept. of Community Health, 293 Ga. App. 84, 87-89 (1) (666 SE2d 472) (2008) (records of private companies, whose actions involved the expenditure of public resources, were public records because companies were vehicle through which state agency carried out its public function of administering state health insurance plan); Corp. of Mercer Univ. v. Barrett & Farahany, LLP, 271 Ga. App. 501 (610 SE2d 138) (2005), superseded by statute on other grounds (documents created and maintained by private college campus’s police department were not subject to Open Records Act because no public agency had expressly requested that the campus police perform a service or function on its behalf); Dept. of Human Resources v. Northeast Ga. Primary Care, 228 Ga. App. 130, 134-135 (4) (491 SE2d 201) (1997) (observing that Open Records Act has been applied to private entities when public agencies have delegated to them their official responsibilities and authority).
If — as the majority holds — Northside were not the vehicle through which the Authority carries out its official responsibilities, then the validity of the entire lease-transfer agreement would be in question. And if Northside were riot the vehicle through which the Authority discharges its responsibility “to provide for the health of the people,” Richmond County Hosp. Auth., 255 Ga. at 184 (1), then no one would be meeting that obligation. And if Northside were to stop providing those services, “the [Authority] would be required to step in to establish another method” for discharging its obligation. Red & Black Publishing Co. v. Bd. of Regents, 262 Ga. 848, 854 (3) (b), n. 13 (427 SE2d 257) (1993) (emphasis omitted).
In short, while the Authority was certainly free to delegate those responsibilities, it was not free to abdicate them. And, contrary to the majority, the terms of the lease-transfer agreement repeatedly make very clear that it is not an attempt to abdicate them.
(b) Terms of the lease-transfer agreement.
In support of its conclusion that Northside has no responsibility under the terms of that agreement to act for the public good or as a *861 vehicle to carry out the Authority’s official responsibilities, the majority relies on two provisions of the lease-transfer agreement: (1) that Northside would use “the Operating Assets and Existing Operations so transferred to it in the operation of the Leased Facilities and in furtherance of Northside’s purposes as set forth in its Articles of Incorporation and as otherwise permitted by [the] Agreement”; and (2) that Northside would “have sole and exclusive charge of the operation of the Leased Facilities.”
But the lease-transfer agreement and Northside’s articles of incorporation show that the responsibilities Northside has undertaken are much broader than that. As to the first of those provisions, the lease-transfer agreement does provide that Northside was to operate the leased facilities “in furtherance of [its] purposes.” But it specifies that those purposes are “set forth in its Articles of Incorporation” — not the bylaws as the majority implies. And the relevant provision of Northside’s articles of incorporation, which is set out below,[49] • simply states that its corporate purpose is “to operate, directly or indirectly, health care facilities for the benefit of the general public. . . .” (Emphasis supplied.) This, of course, is precisely in line with the Authority’s delegation of its governmental obligations to Northside.
Further, the lease-transfer agreement describes the Authority’s stated intent in leasing to Northside a facility composed of a hospital, a surgery center, and two office buildings for $100,000 per year, as to “promote the public health needs of the community by making additional facilities available in the community,” “by lowering the cost of health care in the community,” and by “seizing] available opportunities both within and outside Fulton County.” As discussed below, at the end of the lease term, those “seize [d] opportunities” become the property of the Authority. The transactions reflected in the documents at issue, acquisition of the four physician practices, furthers the Authority’s stated goal of “seizing] available opportunities.” Consequently, Northside’s acquisition of those practices is on behalf of the Authority and the documents related to those acquisitions are public records.
*862 As to the second of those provisions, the agreement does indeed provide that Northside has “the power and authority to stand in the place of the Authority” and that the parties intend that the Authority’s “grant of powers and authority shall be broadly construed and that Northside shall have full power to act for the Authority, in the Authority’s name, place and stead in any and all circumstances.” Indeed, as the majority points out, the Authority retained only limited duties and powers under the lease. It necessarily, then, delegated to Northside the remainder of its powers and responsibilities so as to satisfy its governmental obligation. But contrary to the majority what that means is that the lease-transfer agreement, in its parts and as a whole, sets out an express intent to make Northside the entity to which the Authority delegated its governmental responsibilities and authority. It is the vehicle through which the Authority acts.
That intent is reaffirmed in other provisions of the lease-transfer agreement. The agreement ensures that the Authority retains sufficient control over the hospital to satisfy the requirements of the Hospital Authorities Law. A provision of that law, OCGA § 31-7-75 (7), requires that, before a hospital authority enters a lease agreement like the one at issue here, it must “first determine [ ] that such lease will promote the public health needs of the community.” And a hospital authority is required by that same subsection to “retain[ ] sufficient control” over the project to ensure that the lessee obtains no more than a reasonable rate of return on its investment. Id.
The lease-transfer agreement further provides that the operating assets, which include all subsequent accumulations by Northside, presumably including the acquisitions at issue here, will revert to the Authority at the end of the lease. It even contemplates a method of disposing of Northside assets that the Authority cannot legally hold: Northside will dispose of such assets according to the Authority’s direction, with the proceeds reverting to the Authority.
And the lease-transfer agreement expressly provides that North-side stands in the place of the Authority and that the agreement was intended to “promote the public health needs of the community.”
Those express acknowledgments of Northside’s public purpose defeat the majority’s attempt to distinguish Northwest Ga. Health System on the basis of language in the corporate bylaws at issue in that case, which provided that the nonprofit corporation there was organized “for the benefit of, to perform the functions of, or to carry out the purposes of” the involved hospital authorities. Northwest Ga. Health System, 218 Ga. App. at 337. Moreover the language the majority cites was but one factor the Northwest Ga. Health System court considered in determining that the trial court was authorized to *863 find that the nonprofit corporation in that case was the vehicle through which the authorities acted.
The majority also attempts to distinguish Northwest Ga. Health System on the ground that the case concerned only certain, particular documents. But that opinion was not so narrow. It did not describe or distinguish among documents requested, and its analysis did not turn on the scope or nature of the documents requested.
Another fact supporting the conclusion that Northside is performing a service or function on behalf of the Authority is that the Authority has placed a valuable public asset into Northside’s hands — the leased premises. In United Health Care of Ga., 293 Ga. App. at 88 (1), we concluded that the records of certain private companies were public records because the companies were the vehicle through which a state agency carried out its public function of administering the state health insurance plan, which involved the expenditure of public funds. When a public agency has entrusted a private entity with public resources, we held, that fact is at least some indication that the private entity is performing a public-agency function.
The trial court here focused on what she perceived to be the lack of evidence that the Authority was involved in “the transactions at issue in this case.” But the Northwest Ga. Health System court looked to the overall nature of the relationships between the hospital authorities and the private, nonprofit corporations, not to any particular transactions. Contrary to the majority’s characterization, I would not decide that “all of a Richmond hospital’s documents are public records” for purposes of the Open Records Act. It is unnecessary to reach such a sweeping construction in this case, because here it is abundantly clear that Northside entered the four transactions on behalf of the Authority, and the documents related to those transactions are therefore public records. And while I would hold that these documents are public records within the meaning of the Open Records Act, I would also hold, as detailed in Division 2 of this dissent, that the case must be remanded for the trial court to determine whether the documents are subject to an exception to the Act. SeeOCGA § 50-18-72, which sets out a long list of statutory exceptions to the Open Records Act.
The case that the majority relies on as most analogous to the instant case does not support its position. See Corp. of Mercer Univ., 271 Ga. App. at 501. In that case, as the majority describes, we held that documents created and maintained by a private college campus’s police department were not subject to the Open Records Act because no public agency had expressly requested that the campus police perform a service or function on its behalf. Here, on the other hand, the Authority expressly delegated its governmental obligations to *864 Northside, in part to enable it “to seize available opportunities,” such as the four acquisitions at issue. The relevance of Corp. of Mercer Univ. is that we found the Act not applicable when, unlike here, the private entity did not carry out “some public purpose at the express request of a public office or agency.” Id. at 505 (1) (b).
For these reasons, consistent with the General Assembly’s declaration in the Open Records Act that it is “the strong public policy of this state . . . that public access to public records should be encouraged,” OCGA § 50-18-70 (a), I would conclude that the documents Smith requested are public records within the meaning of the Act.
I acknowledge that Northside has made countervailing policy arguments: that subjecting entities like Northside to the Open Records Act would prevent them from competing effectively in the marketplace and that counties should be permitted, if not encouraged, to get government out of the healthcare business. But Northside’s policy arguments should be addressed to the General Assembly. We have neither the institutional competence to properly evaluate them nor the legitimate authority to subordinate to them the policy announced by the General Assembly in the text of the Open Records Act.
2. Trade secrets exception.
Whether the requested documents are exempted from disclosure under a trade secrets exception to the Open Records Act, see OCGA §§ 50-18-72 (a) (34), 31-7-75.2, remains for resolution. Smith argues that the trial court erred in ruling that Northside is entitled to a trial on its claim of exemption. But he did not seek a pretrial resolution of the exemption issue, and the trial court issued no ruling denying such a motion. So this enumeration presents nothing for review. See Matthews v. Tele-Systems, 240 Ga. App. 871, 875 (5) (525 SE2d 413) (1999) (“[Tjhere is no order from which to appeal. Thus, there is nothing for us to review.”) (citation omitted); McDaniel v. State, 221 Ga. App. 43, 46 (1) (470 SE2d 719) (1996) (this court “has no jurisdiction to address issues . . . raised for the first time on appeal”) (citation omitted).
3. Protective order.
Northside appeals the trial court’s grant of Smith’s motion for a protective order prohibiting any discovery concerning the identity of Smith’s clients or their purpose in bringing the action. “It is well settled that the conduct of discovery is within a trial court’s broad discretion.” Exxon Corp. v. Thomason, 269 Ga. 761, 763 (3) (504 SE2d 676) (1998) (citations omitted). And “[ujnless the trial court has clearly abused [that] discretion,... we will defer to [her] conclusion about whether a protective order should be granted.” Norfolk Southern R. Co. v. Hartry, 316 Ga. App. 532, 534 (729 SE2d 656) (2012) (citation omitted).
*865 Northside argues that the information it seeks is relevant to its argument that the records Smith requested are trade secrets exempt from the Open Records Act. It elaborates that the information it seeks would show that Smith’s client is a competitor that sought the documents for competitive purposes, thus supporting its contention that the documents are protected by the trade secrets exemption of the Open Records Act.
At the hearing on the motion for protective order, Northside conceded that it has other ways of establishing that the documents are trade secrets, and, in fact, contended that it already had done so. And Smith’s counsel conceded at oral argument before this court that, for purposes of analysis of the scope of the applicability of the Open Records Act, Northside is entitled to the benefit of the assumption that Smith’s client is a competitor.
At the time the trial court entered the protective order, she already had dismissed Northside’s counterclaim, which she characterized as asserting claims for
unfair competition, interference with contractual relationships, interference with ongoing and prospective business relationships, attempting to obtain business secrets under false pretenses, and pursuing a sham, false, and frivolous lawsuit in order to gain unfair and improper competitive advantage.
She held that “[s]uch claims necessarily involve the intentions, purposes, and motivations behind [Smith’s] current action seeking enforcement of the Open Records Act,” and that allowing the counterclaims to proceed would have a “chilling effect” and “would circumvent well-established public policy in favor of open government.” A trial court may prevent the
use of discovery which is oppressive, unreasonable, unduly burdensome or expensive, harassing, harsh, insulting, annoying, embarrassing, incriminating, or directed to wholly irrelevant and immaterial or privileged matters or as to matter concerning which full information is already at hand.
Sechler Family Partnership v. Prime Group, 255 Ga. App. 854, 857 (2) (567 SE2d 24) (2002) (citation omitted). Compare Galbreath v. Braley, 318 Ga. App. 111, 112-113 (733 SE2d 412) (2012) (reversing grant of protective order that prohibited litigant from conducting discovery “necessary” to his case).
*866 Decided March 30, 2016 —
Reconsideration denied April 14, 2016
Jones Day, Peter C. Canfield, Lucas W. Andrews, Samantha R. Mandell, Rebekah N. Plowman, Daniel J. Conner, Jr., Laura K. Gura, for appellant.
Dentons US, J. Randolph Evans, Thurbert E. Baker, Bryan E. Bates, Nathan L. Garroway; Baker & Hostetler, James C. Rawls, S. Derek Bauer, Ian K. Byrnside; Susan V. Sommers; Nelson, Mullins, Riley & Scarborough, S. Wade Malone, Charles T. Huddleston, Jessica Rutledge; Kilpatrick, Townsend & Stockton, Sidney S. Welch, Jeremy P. Burnette; Edward C. Konieczny, for appellees.
Hull Barrett, David E. Hudson, amicus curiae.
Under these facts, Northside has not shown that the trial court abused her discretion.
I am authorized to state that Presiding Judge Barnes joins in this dissent.

 The purposes of the corporation are to operate, directly or indirectly, health care facilities for the benefit of the general public and, specifically, to own, lease, and operate hospitals, clinics, and other health care facilities, to provide hospital and medical care and related functions, and generally to undertake and perform all other activities necessary, incidental, useful, or advisable, directly or indirectly, to the foregoing including the exercise of all other powers and authorities permitted for the corporation by the Georgia Nonprofit Corporation Code, subject to the limitations of Section 501 (c) (3) of the Code.
(Emphasis supplied.)