A06A1028. CENTRAL ATLANTA PROGRESS, INC. v. BAKER et al.
A06A1029. METROPOLITAN ATLANTA CHAMBER OF COMMERCE, INC. v. BAKER et al.
(629 SE2d 840)

JOHNSON, Presiding Judge.

These appeals involve the Georgia Open Records Act and the refusal of Central Atlanta Progress, Inc. ("CAP") and the Metropolitan Atlanta Chamber of Commerce, Inc. ("MACOC") to permit the Atlanta Journal-Constitution ("AJC") to inspect their bids for the NASCAR Hall of Fame and the 2009 Super Bowl game. For the reasons which follow, we affirm the judgments of the trial court ordering disclosure of the bids.

CAP is a private corporation made up of Atlanta-area businesses. Upon learning of NASCAR's interest in creating a Hall of Fame, CAP's president met with NASCAR officials and proposed the construction of such a facility in Atlanta. NASCAR officials asked CAP to submit a bid. CAP assembled a NASCAR Hall of Fame Organizing Committee consisting of forty-six members, eight of whom represented public agencies. CAP also assembled a NASCAR Hall of Fame

Advisory Board consisting of eight government officials. This advisory board, CAP says, had no responsibilities, but served to show that public officials supported the idea of the Hall of Fame being located in Atlanta.

MACOC is a private corporation composed of about 3,000 businesses in the Atlanta area. The National Football League ("NFL") requested MACOC's Atlanta Sports Council to submit a bid for the right to host the 2009 Super Bowl. MACOC assembled a 15-member bid committee. Six of the members are officers of public agencies. Pursuant to the NFL's requirements, MACOC then formed the Atlanta 2009 Super Bowl Bid Committee, Inc., to formally submit the bid to the NFL.

In May 2005, the AJC requested a copy of MACOC's 2009 Super Bowl bid pursuant to Georgia's Open Records Act.[1] In June 2005, the AJC requested a copy of the NASCAR Hall of Fame bid from CAP. Both MACOC and CAP, who were represented by the same legal counsel, refused to disclose the bids. MACOC and CAP urged that because the bids were prepared neither by nor on behalf of public agencies, the documents were not subject to disclosure under the Act.

In response, the AJC requested that the attorney general of the State of Georgia enforce MACOC's and CAP's compliance with the Open Records Act. After receiving written arguments from all parties, the attorney general issued an opinion stating that, in light of the significant involvement of public officials, public employees, public resources and public funds in the matters, the bids were subject to the Open Records Act and should be disclosed. Nonetheless, MACOC and CAP still refused to disclose the documents. The attorney general filed a lawsuit against MACOC and CAP pursuant to OCGA § 50-18-73 (a), seeking an order requiring disclosure of the documents.[2] The AJC was permitted to intervene in the lawsuit.

After a bench trial, the superior court entered judgment in favor of the AJC and the attorney general, holding that MACOC and CAP were required under the Open Records Act to disclose the bids. In Case No. A06A1028, CAP appeals. MACOC appeals in Case No. A06A1029.

The Open Records Act was enacted in the public interest to protect the public from "closed door" politics and the potential abuse of individuals and misuse of power such policies entail.[3] Therefore, the Act must be broadly construed to effect its remedial and protective

---

[1] OCGA § 50-18-70 et seq.

[2] The attorney general also named several other entities in the lawsuit, but the claims as to those parties are not relevant to these appeals.

[3] *Wallace v. Greene County*, 274 Ga. App. 776, 782 (2) (618 SE2d 642) (2005).

purposes.[4] The intent of the General Assembly was to encourage public access to information and to promote confidence in government through openness to the public.[5]

The Open Records Act provides, in relevant part, that all public records, except those which by order of a court or by law are prohibited or specifically exempted from being open to inspection by the general public, shall be open for a personal inspection by any citizen of this state.[6] "Public records" include all documents "prepared and maintained or received in the course of the operation of a public office or agency."[7] Public records also include "such items received or maintained by a private person or entity on behalf of a public office or agency which are not otherwise subject to protections from disclosure."[8]

## Case No. A06A1028

1. CAP acknowledges that the Open Records Act applies to records prepared and maintained or received by a private entity performing a service for or on behalf of a public office or agency,[9] but contends the trial court erred in holding that it was acting "for or on behalf of" a public office or agency. There was no error.

It is undisputed that the NASCAR bid involved the use of public funds. The bid cost about $500,000 to prepare. Of that amount, $300,000 came directly from public entities. Fulton County and the Fulton County Development Authority each contributed $50,000 to prepare the bid. The Atlanta Convention and Visitors Bureau ("ACVB") contributed another $100,000. The Georgia Department of Economic Development contributed $100,000 toward bid preparation.

In addition to the use of public funds to prepare the bid, the bid called for the future expenditure of substantial public resources. There was testimony that about one-third of the $90 million estimated cost of the facility would come from public sources. The president of CAP testified that there had been "no real discussion about amounts" with the City, but acknowledged an e-mail he wrote to the commissioner of the Georgia Department of Economic Development stating that he had a pledge from the mayor of Atlanta and the Atlanta Development Authority to use tax allocation district

---

[4] Id.
[5] Id.
[6] OCGA § 50-18-70 (b).
[7] OCGA § 50-18-70 (a).
[8] Id.
[9] Id.

proceeds "and/or some other direct allocation" to help fund construction of the facility. The president added that the Hall of Fame would perhaps qualify for $5 million in tax allocation district funds. He further testified that CAP hoped to receive $25 million from the state "in whatever form," that this was discussed with state officials before the bid was submitted, and that that amount was included in the NASCAR bid.

Furthermore, public officials and employees participated in the preparation and promotion of the bid. Georgia's governor, Atlanta's mayor, and numerous other public officials served on the NASCAR Hall of Fame Organizing Committee and the NASCAR Hall of Fame Advisory Board. Among those serving on the organizing committee were the commissioner and deputy commissioner of the Georgia Department of Economic Development, the executive director of the Georgia World Congress Center ("GWCC") Authority, the manager of intergovernmental affairs from the Atlanta mayor's office, the mayor's special assistant, the president of the Atlanta Development Authority, and the president of the ACVB. Members of the advisory board included Georgia's governor, Atlanta's mayor, the Fulton County Commission chairman and a commissioner, the Atlanta City Council president, two United States senators, and a congressman. Bid preparation was reviewed and approved by various public officials. The governor and mayor were involved in "promoting the bid." CAP's president testified that he decided to discuss the NASCAR bid with public officials "because they are terribly interested in it. It is a very important project to the State, to the City, to the county. . . ."

CAP issued a press release announcing the formation of the advisory board and its role in assisting the NASCAR bid committee in "Atlanta's race to score the NASCAR Hall of Fame." The press release named the public officials and stated that the presence of key political leaders on the committee "helps solidify the message to NASCAR that everyone here in Georgia and the City is behind this effort," that "[g]overnmental support is a critical piece in how any serious bid is going to come together," and that the bid committee "will continue to build support from our political leadership." On its official website, the City identified itself as being in partnership with CAP, the state and others in the NASCAR Hall of Fame bid project, "working very hard to meet all of NASCAR's requirements, to make sure that we win the bid for the City."

In a letter seeking funding from the Fulton County Board of Commissioners, the president of CAP wrote:

> Atlanta is one of seven cities competing for the right to develop a NASCAR Hall of Fame. This would be an enormous economic generator for the City, Fulton County, the

Atlanta metro area, and the entire state of Georgia. [CAP] is staffing the effort to bid for the NASCAR Hall of Fame Organizing Committee. The committee is made up of representatives from Atlanta's corporate community (including Atlanta based NASCAR sponsors), the Metropolitan Atlanta Chamber of Commerce, the Georgia Department of Economic Development, the Atlanta Convention and Visitors Bureau, the City and Fulton County.

The trial court was authorized to find from the evidence presented that CAP was working on behalf of public offices or agencies in making the bid for the NASCAR Hall of Fame.[10]

CAP relies on *Corp. of Mercer Univ. v. Barrett & Farahany, LLP*,[11] as holding that the bid records cannot be considered "public" because there was no evidence that CAP was acting at the "express request" of a public office or agency in preparing the bid. CAP's reliance on *Mercer Univ.* is misplaced. That case involved the records of a private police force at a private university.[12] It did not involve public funds or public officials, and any documents received or maintained by the campus police were received or maintained strictly on behalf of the private university.[13] We found that the private university's police department "[did] not perform any activities on behalf of any governmental agency."[14] In *Mercer Univ.*, we noted that decisions in prior cases holding that the records of a private entity were public records hinged on factual findings that the private entity carried out a public purpose at the express request of a public agency (a fact not present in the *Mercer Univ.* case).[15] That "express request" factor was but one reason we held that the campus police records were not subject to the Open Records Act. The instant case and *Mercer Univ.* are so different factually that we find it unnecessary to consider whether CAP acted at the express request of a public office or agency. The Open Records Act must be broadly construed to effect its purposes.[16] Given the significant involvement of public officials and resources in the matter, we will not give the Act the narrow interpretation CAP seeks.

---

[10] See generally *Hackworth v. Bd. of Ed. for City of Atlanta*, 214 Ga. App. 17 (447 SE2d 78) (1994) (records of school bus drivers employed by private company subject to Open Records Act).

[11] 271 Ga. App. 501 (610 SE2d 138) (2005).

[12] Id. at 502-503 (1) (a).

[13] Id.

[14] Id. at 505 (1) (b).

[15] Id.

[16] *Atlanta Journal v. Hill*, 257 Ga. 398, 399 (359 SE2d 913) (1987).

The trial court here clearly had evidence from which it could find that the NASCAR bid was prepared on behalf of public offices or agencies, and that it therefore fell within the parameters of the Open Records Act.

2. CAP argues that the trial court erred in holding that public officials "received" the bid. CAP urges that it prepared and maintained the bid documents and that public officials merely reviewed and returned the documents to it. Therefore, CAP claims, the Open Records Act was not implicated. We disagree.

The Open Records Act expressly provides, in relevant part, that public records include all documents received in the course of the operation of a public office or agency.[17] It further provides that records received or maintained by a private entity in the performance of a service or function for or on behalf of a public agency or public office shall be subject to disclosure to the same extent that such records would be subject to disclosure if received or maintained by such public agency or office.[18] The Act also provides that it "shall be construed to disallow an agency's placing or causing such items to be placed in the hands of a private person or entity for the purpose of avoiding disclosure."[19]

The trial court found from the evidence that CAP systematically and purposefully sought to evade the Open Records Act by permitting public officials to review the documents, and then retrieving the records in order to prevent them from reaching government files. In fact, a manager from the mayor's office testified that the Open Records Act was discussed at the meetings, and a conscious effort was made to collect and retrieve the bid documents handed out at the meetings "so that individuals in the room who were subject to the Open Records Act would not have them in their possession." The Act clearly does not condone evasive efforts such as those practiced here.

In bench trials, the court sits as the trier of fact, and its findings will not be reversed absent clear error.[20] If any evidence supports the trial court's determination, this Court will affirm.[21] There being evidence to support the trial court's findings, the judgment is affirmed.

---

[17] OCGA § 50-18-70 (a).

[18] Id.

[19] Id.; see *Clayton County Hosp. Auth. v. Webb*, 208 Ga. App. 91, 94-95 (1) (430 SE2d 89) (1993).

[20] *Simmons v. McBride*, 228 Ga. App. 752, 753 (492 SE2d 738) (1997).

[21] Id.

*Case No. A06A1029*

3. MACOC contends the trial court erred in holding that its bid was prepared on behalf of a public agency. MACOC states that only about six of its 3,000 members have government ties, and only about six of the Super Bowl Bid Committee's fifteen members were affiliated with government offices. MACOC adds that no public money was spent on its bid. The trial court did not err in finding in favor of the AJC and the attorney general on this issue.

The purpose of the 2009 Super Bowl Bid Committee established by MACOC was to persuade the NFL owners to allow the City of Atlanta to host the 2009 Super Bowl event. The bid committee included numerous public officials, including Georgia's governor, Atlanta's mayor, the executive director of the GWCC Authority the chief operating officer of the GWCC, the general manager of the Georgia Dome, and the president of the ACVB. GWCC staff were involved in the preparation of bid documents; the executive director personally reviewed the bid as it pertained to the Georgia Dome and the GWCC. The ACVB staff also analyzed and prepared portions of the bid.

There was evidence that MACOC's bid required the future use of public resources to be effective. For instance, the GWCC Authority agreed to lease the Georgia Dome, the GWCC, and parking lots owned by the GWCC Authority to the NFL at no charge. Use of these facilities for the duration of the event was valued at about $2.3 million. There was also evidence that public entities would provide millions of dollars in other "in-kind" services for the Super Bowl. For example, the City of Atlanta pledged to provide additional police, fire and other services for the event, at an estimated cost of $1.4 million. MACOC's president testified that he personally conferred with the governor and mayor about the funding amounts shown in the bid before presenting it to the NFL. He added that the officials indicated "they were going to try to make sure they could deliver" the amounts listed in the bid.

There was also evidence of involvement by public officials in the bid preparation. GWCC and Georgia Dome staff were involved in preparing the bid as it pertained to those facilities. Numerous government officials, including Atlanta's mayor, City Council president, police chief, fire chief, and public works commissioner, wrote letters to the NFL commissioner expressing their commitment to provide the public services described in the bid.

There being evidence to support the trial court's determination that the Super Bowl bid was made on behalf of a public office or agency, it is affirmed.[22]

4. MACOC contends the trial court erred in holding that public officials "received" a copy of its bid. We disagree.

As discussed above, there was evidence that various public officials prepared parts of, reviewed, and approved the Super Bowl bid. MACOC's president testified that he recognized the fact that some members of the Super Bowl Bid Committee "were subject to the Open Records Act," and that MACOC showed the bids to such members then requested the bids back because "we knew that that bid . . . was competitive. . . . And that by providing [the bid] to government officials, who were subject to the Open Records Act, it would be accessible to . . . our competitors." The executive director of the GWCC Authority testified that the GWCC did not have a copy of the final bid because "[w]e know all of our records are subject to the Open Records [Act]. . . ."

The evidence was sufficient to show that the bid documents were "received" within the meaning of the Open Records Act. The trial court did not err in ordering their disclosure.

*Judgments affirmed. Miller and Ellington, JJ., concur.*

DECIDED APRIL 11, 2006.

*Alston & Bird, Douglas G. Scribner, Paul J. Kaplan,* for appellants.

*Thurbert E. Baker, Attorney General, Stefan E. Ritter, Assistant Attorney General,* for appellees.