## A08A0579. UNITED HEALTHCARE OF GEORGIA, INC. et al. v. GEORGIA DEPARTMENT OF COMMUNITY HEALTH.

(666 SE2d 472)

BERNES, Judge.

United HealthCare of Georgia, Inc. and United HealthCare Insurance Company (collectively, "United HealthCare") sought to enjoin the disclosure of certain documents relating to United Health-Care's contract with the Georgia Department of Community Health ("DCH") for the administration of the State Health Benefit Plan ("SHBP"). Some of the documents had been provided to the DCH by United HealthCare, while other documents had not and remained in United HealthCare's sole possession. Granting summary judgment to the parties seeking the documents, the trial court ruled that all of the documents were public records under the Georgia Open Records Act, OCGA § 50-18-70 et seq. and were not exempt from disclosure as trade secrets. We conclude that while all of the documents are public records as a matter of law, they nevertheless may be exempt from disclosure as trade secrets, if they satisfy the applicable two-part test. Therefore, we affirm in part, vacate in part, and remand the case for consideration of whether the documents constitute trade secrets.

> It is well established that on appeal of a grant of summary judgment, the appellate court must determine whether the trial court erred in concluding that no genuine issue of material fact remains and that the party was entitled to judgment as a matter of law. This requires a de novo review of the evidence. Summary judgment is appropriate when the court, viewing all the facts and evidence and reasonable inferences from those facts in a light most favorable to the non-movant, concludes that the evidence does not create a triable issue as to each essential element of the case.

(Citations and punctuation omitted.) *Rubin v. Cello Corp.*, 235 Ga. App. 250, 250-251 (510 SE2d 541) (1998). Mindful of these principles, we turn to the record here.

*Administration of the SHBP.* The DCH is authorized by Georgia law to establish and administer a health insurance plan for state employees; accordingly, it has established the SHBP. OCGA § 45-18-2 (a); Ga. Comp. R. & Regs. r. 111-4-1-.01 (55). As part of its administration of the SHBP, the DCH must ensure "a reasonable relationship between the hospital, surgical, and medical benefits to be included and the expected distribution of expenses of each such type to be incurred by the covered employees and dependents."

OCGA § 45-18-3 (1). See also Ga. Comp. R. & Regs. r. 111-4-1-.02 (1) (a). The DCH also is empowered to contract with a third-party insurer "to provide administrative services in connection with" the plan. OCGA § 45-18-6 (c).

In 2005, following a public bidding process, the DCH chose United HealthCare to serve as third-party administrator of the SHBP, and a contract was executed by the parties reflecting the same (the "TPA Contract"). Under the TPA Contract, United HealthCare is required to process and pay health insurance claims for SHBP members out of a bank account funded by DCH. See TPA Contract, Section 3.15.2. United HealthCare also must maintain a network of health care providers (i.e., hospitals and physicians) for SHBP members and execute formal contracts with those providers that address, among other factors, levels of reimbursement. TPA Contract, Sections 5.1 and 5.1.1.

It is undisputed that prior to executing the TPA Contract, United HealthCare already had in place a network of health care providers for its public and private sector customers throughout Georgia. As such, many of the provider contracts relevant to services provided to SHBP members were executed and in place prior to the execution of the TPA Contract; United HealthCare then made this preexisting network of providers available to SHBP members after contracting with the DCH. But, an effort also was made to sign up additional providers after the execution of the TPA Contract to cover parts of Georgia that were not covered by United HealthCare's existing network.

*The Open Records Act Requests.* In March 2006, the South Georgia Physicians Association, LLC ("SGPA") submitted an Open Records Act request to the DCH for documents relating to the TPA Contract. The SGPA subsequently amended its request and, joined by the Medical Association of Georgia ("MAG"), made an Open Records Act request directly to United HealthCare. SGPA and MAG requested that either the DCH or United HealthCare produce copies of: (1) all fee schedules related to the SHBP to which United HealthCare is the third-party administrator; (2) all executed contracts between United HealthCare and the various physicians in Georgia regarding the SHBP; (3) all executed contracts between United HealthCare and various hospitals in Georgia regarding the SHBP; (4) all correspondence between the DCH and United Health-Care related to the physician and hospital contracts in Georgia for the SHBP; and (5) all template form contracts between United HealthCare and various physicians in Georgia regarding the SHBP.

Requests (1)-(3) were for provider contracts and fee schedules that were never provided to the DCH and that remained in United Healthcare's sole possession (the "UHC Provider Documents").

Requests (4) and (5) involved documents that United HealthCare had previously submitted to the DCH (the "DCH Documents"). United HealthCare objected to the production of both the UHC Provider Documents and the DCH Documents. However, the DCH determined that the DCH Documents were subject to inspection under the Open Records Act and informed United HealthCare that it planned to make the documents available to SGPA and MAG.

*The Litigation.* In May 2006, United HealthCare filed a verified complaint seeking to temporarily and permanently enjoin the DCH from making the DCH Documents available to SGPA and MAG. SGPA and MAG successfully moved to intervene in the suit and then counterclaimed for the disclosure of both the DCH Documents and the UHC Provider Documents. After discovery, United HealthCare moved for summary judgment, contending that as a matter of law, the UHC Provider Documents were not public records under the Open Records Act, and that both the DCH Documents and the UHC Provider Documents were exempt from disclosure because they contained trade secrets. SGPA and MAG denied these contentions and cross-moved for summary judgment, arguing that all of the documents were public records subject to disclosure.

The trial court granted SGPA and MAG's motion for summary judgment, denied United HealthCare's motion for summary judgment, and closed the case. First, the trial court ruled as a matter of law that the UHC Provider Documents were public records under the Open Records Act, OCGA § 50-18-70 (a). Second, the trial court determined that neither the DCH Documents nor the UHC Provider Documents were protected from disclosure by the trade secrets exemption to the Open Records Act, OCGA § 50-18-72 (b) (1). United HealthCare now appeals.

> The Open Records Act was enacted in the public interest to protect the public from "closed door" politics and the potential abuse of individuals and misuse of power such policies entail. Therefore, the Act must be broadly construed to effect its remedial and protective purposes. The intent of the General Assembly was to encourage public access to information and to promote confidence in government through openness to the public.

(Footnotes omitted.) *Central Atlanta Progress v. Baker*, 278 Ga. App. 733, 734-735 (629 SE2d 840) (2006). Nevertheless, "while the Open Records Act has been broadly applied as it relates to public offices or agencies to ensure adequate public access to public records, [it] should not be construed broadly and in derogation of its express terms so as to bring private entities within the purview of the

statute." *Corp. of Mercer Univ. v. Barrett & Farahany, LLP*, 271 Ga. App. 501, 503 (1) (a) (610 SE2d 138) (2005).

The threshold question in an Open Records Act suit is whether the documents are public records as defined in OCGA § 50-18-70 (a). *Northwest Ga. Health System v. Times-Journal*, 218 Ga. App. 336, 338 (1) (461 SE2d 297) (1995). If the documents are public records, the next step is to determine whether they are exempt from disclosure under OCGA § 50-18-72 or some other statute. *Hardaway Co. v. Rives*, 262 Ga. 631, 632-633 (1) (422 SE2d 854) (1992).

1. *Public Records.* United HealthCare asserts that the trial court erred in concluding that the UHC Provider Documents are public records under the Open Records Act.[1] United HealthCare argues that because it is not a public agency, the UHC Provider Documents should not be treated as public records because those documents were never provided to the DCH and have remained solely in United HealthCare's possession. We disagree.

The Open Records Act defines "public record" as material "prepared and maintained or received in the course of the operation of a public office or agency." OCGA § 50-18-70 (a). Significantly, the Act further provides that

> [r]ecords received or maintained by a private person, firm, corporation, or other private entity in the performance of a service or function for or on behalf of an agency, a public agency, or a public office shall be subject to disclosure to the same extent that such records would be subject to disclosure if received or maintained by such agency, public agency, or public office.

Id. As such, the Act requires the disclosure of documents possessed by *a private entity* performing a service or function for or on behalf of a public agency. OCGA § 50-18-70 (a); *Central Atlanta Progress*, 278 Ga. App. at 735. Our case law gives several examples in which such disclosure was required.

In *Central Atlanta Progress*, we held that bidding documents prepared by a private corporation were public records subject to disclosure because public funds had been used to prepare the bid, the bid called for the future expenditure of substantial public funds, and multiple public officials and employees had actively participated in the preparation and promotion of the bid. 278 Ga. App. at 735-737 (1), 739-740 (3). Furthermore, in *Northwest Ga. Health System*, this Court concluded that a private nonprofit hospital corporation was

---

[1] United HealthCare does not dispute that the DCH Documents constitute public records.

88

subject to the Open Records Act where the corporation "[had] contractually agreed to operate public hospital authority assets for the public good" and had served as "the vehicle through which the public hospital authorities carried out their official responsibilities." 218 Ga. App. at 340 (1). Finally, in *Hackworth v. Bd. of Ed. &c.*, 214 Ga. App. 17, 18-19 (1) (a) (447 SE2d 78) (1994), we held that the personnel records of a private transportation company were public records subject to disclosure because the company was the "management tool" through which the school board carried out its public function of transporting students.

The uncontroverted facts in the present case are indistinguishable from this case law. Like in *Central Atlanta Progress*, United HealthCare's administration of the SHBP involves the current and future expenditure of substantial public funds. Moreover, the record reflects that after the TPA Contract was executed, public officials from the executive branch were actively involved in signing up new health care providers for the SHBP, assisting providers in obtaining changes to their provider contracts with United HealthCare, and conducting town hall meetings to answer questions about provider issues. Hence, the instant case includes significant involvement of public officials as in *Central Atlanta Progress*. Additionally, like the private companies in *Northwest Ga. Health System* and *Hackworth*, United HealthCare is the "vehicle" or "management tool" through which the DCH has chosen to carry out its public function of administering the SHBP. Accordingly, United HealthCare was carrying out a service or function for or on behalf of the DCH and its records pertaining thereto are subject to disclosure under the Open Records Act. See OCGA § 50-18-70 (a); *Central Atlanta Progress*, 278 Ga. App. at 735-737 (1), 739-740 (3); *Northwest Ga. Health System*, 218 Ga. App. at 340; *Hackworth*, 214 Ga. App. at 18-19 (1) (a). Compare *Mercer Univ.*, 271 Ga. App. at 505 (1) (b) (holding that private university's police department was not subject to the Open Records Act, where the department received no public funds, and no public agency had requested that the department perform a service or function on its behalf).

United HealthCare argues that even if it is otherwise subject to the Open Records Act, the provider contracts and fee schedules at issue here — the UHC Provider Documents — should not be treated as public records subject to disclosure. Specifically, United Health-Care emphasizes that many of the health care provider contracts and fee schedules were already executed prior to the TPA Contract, and contends that the ones that were executed after the TPA Contract were executed by United HealthCare on its own behalf in order to increase its network and provide services to all of its private and public sector customers. As such, United HealthCare asserts that the

UHC Provider Documents were not received or maintained *in the performance of* any service or function done for or on behalf of the DCH. We are unpersuaded.

While many of the provider contracts and fee schedules relevant to services provided to SHBP members were in place prior to the execution of the TPA Contract, the TPA Contract specifically provides that United HealthCare is required to "maintain formal contracts with all Network Providers that address the level of reimbursement, Provider access, quality requirements, and other key factors." TPA Contract, Section 5.1. Likewise, the TPA Contract requires United HealthCare to "ensure that its network of Providers is adequate to assure access to all Covered Services." TPA Contract, Section 5.1.1. As such, all of the provider contracts and fee schedules at issue here are maintained, at least in part, in order for United HealthCare to comply with its contractual obligations in administering the SHBP. And, the provider contracts and fee schedules entered into after the TPA Contract was formed were not executed simply on United HealthCare's own behalf to increase its provider network as a whole for all of its customers, but also to comply with Sections 5.1 and 5.1.1 of the TPA Contract. Indeed, in hundreds of cases, United HealthCare entered into provider contracts that were specifically limited to addressing access for SHBP enrollees. Consequently, we conclude that, as a matter of law, the UHC Provider Documents are received or maintained by United HealthCare "in the performance of a service or function for or on behalf of an agency," OCGA § 50-18-70 (a), and thus constitute public records under the Open Records Act.

2. *Trade Secrets Exemption.* United HealthCare next asserts that even if the trial court correctly held that the DCH Documents and the UHC Provider Documents constitute public records, the court nevertheless erred in holding that the documents were not exempt from disclosure as trade secrets. OCGA § 50-18-72 (b) (1) exempts from disclosure "[a]ny trade secrets obtained from a person or business entity which are of a privileged or confidential nature and required by law to be submitted to a government agency." Information that is not commonly known by or available to the public constitutes a trade secret if it meets a two-part test. First, it must "[d]erive[ ] economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use." OCGA § 10-1-761 (4) (A); *Douglas Asphalt Co. v. E. R. Snell Contractor*, 282 Ga. App. 546, 549 (639 SE2d 372) (2006). Second, the information must be "the subject of efforts that are reasonable under the circumstances to maintain its secrecy." OCGA § 10-1-761 (4) (B); *Douglas Asphalt Co.*, 282 Ga. App. at 549.

Here, the trial court did not resolve whether the materials at issue constituted trade secrets under the two-part test as a matter of law. Rather, the trial court concluded that even if the materials at issue could be considered trade secrets, neither the DCH Documents nor the UHC Provider Documents were protected from disclosure by the trade secrets exemption because the documents were not "required by law to be submitted to a government agency."

(a) We disagree with the trial court's analysis of the "required by law" component of the trade secrets exemption. As an initial matter, United HealthCare submitted the DCH Documents to the DCH pursuant to its contractual obligation to administer the SHBP. Therefore, the DCH Documents were "required by law to be submitted to a government agency." See *Douglas Asphalt Co.*, 282 Ga. App. at 549, 551 (3) (information submitted to a public agency in conjunction with or pursuant to a government contract is "required by law to be submitted") (citation and punctuation omitted).

We likewise conclude that the "required by law" component of the exemption does not prevent UHC Provider Documents from being exempt from disclosure as trade secrets. On the one hand, statutory exemptions to the Open Records Act must be narrowly construed. *City of Atlanta v. Corey Entertainment*, 278 Ga. 474, 476 (1) (604 SE2d 140) (2004). On the other hand, "[s]tatutory construction must square with common sense and reasoning," and a statute should not be interpreted in a manner that would lead to an absurd result. (Citation omitted.) *Flournoy v. Brown*, 226 Ga. App. 857, 859 (1) (487 SE2d 683) (1997). Construed literally, the trade secrets exemption found in OCGA § 50-18-72 (b) (1) could be read to mean that if public records are solely in the possession of a private entity, and have never been submitted to a public agency, they cannot qualify for the exemption. Such a construction, however, would lead to the absurd result of documents submitted to a public agency receiving *more* trade secret protection than documents that have always remained in private hands and thus have been kept more secret. In order to avoid this absurd result, we construe the trade secrets exemption found in OCGA § 50-18-72 (b) (1) to mean that public records are exempt from disclosure if they constitute trade secrets, *even if* they are submitted to a public agency, so long as the submission was "required by law." Under this construction, public records that remain in the sole possession of a private entity are exempt from disclosure if the records otherwise qualify as trade secrets under the two-part test set forth in OCGA § 10-1-761 (4). As such, the trial court erred in concluding that the UHC Provider Documents could not be exempt from disclosure because they were never "required by law to be submitted" to the DCH.

(b) Relying upon a contractual waiver theory, SGPA and MAG argue that the trial court ultimately was correct that the DCH Documents and UHC Provider Documents are not exempt from disclosure as trade secrets. See *Gilbert v. City of Jackson*, 287 Ga. App. 326, 327 (1) (651 SE2d 461) (2007) ("A grant of summary judgment must be affirmed if right for any reason, whether stated or unstated. It is the grant itself that is to be reviewed for error, and not the analysis employed.") (citations and punctuation omitted). Specifically, they contend that United HealthCare agreed in Section 13.6 of the TPA Contract to limit the definition of trade secrets to "Proprietary Software," thereby contractually waiving any statutory trade secret protection for other categories of materials.

Section 13.6 (1) provides: "Because DCH is a public agency of the State of Georgia, any information received by the DCH is subject to disclosure under the Georgia Open Records Act, O. C. G. A. § 50-18-70 et seq." Section 13.6 (2) states:

> If Contractor [United HealthCare] deems any information submitted by Contractor under this Contract with respect to Proprietary Software to be a "trade secret" under Georgia law, which information should not be disclosed by the DCH under the provisions of the Open Records Act, Contractor shall mark such information "TRADE SECRET." Notwithstanding the presence or absence of such marking, however, the DCH or its authorized representatives, as appropriate, will decide whether such material is exempt from disclosure under the provisions of the Open Records Act.

The issue is whether these sections of the TPA Contract, when construed together, reflect that United HealthCare waived statutory trade secret protection for all materials other than "Proprietary Software." We conclude that they do not.

As an initial matter, we do not construe the phrase "subject to disclosure" in Section 13.6 (1) of the TPA Contract as meaning that all documents *will* be disclosed pursuant to the Open Records Act. Section 13.6 (1) cites to "O. C. G. A. § 50-18-70 et seq." and thus references the application of the entire Open Records Act, which includes rights of exemption from disclosure for trade secrets. As such, Section 13.6 (1) simply means that because the DCH is a public agency, materials it receives from private companies will have to be disclosed to third parties *if required under the Open Records Act*. In turn, Section 13.6 (2) sets out a special procedure for determining the trade secret status of "Proprietary Software" submitted by United HealthCare to the DCH, but is silent as to whether other

types of materials are entitled to trade secret protection.

Under these circumstances, we cannot say that United Health-Care waived its statutory trade secret protection for all materials other than "Proprietary Software." "[W]here statutory rights are clearly granted, the waiver of such vested rights should not be found in an agreement absent a clear, unambiguous, and conscious intent to surrender such rights." *In re Estate of Sims*, 259 Ga. App. 786, 790-791 (1) (578 SE2d 498) (2003). Sections 13.6 (1) and (2) do not provide such a clear and unambiguous waiver of United Health-Care's statutory right to trade secret protection.

(c) SGPA and MAG further argue that the DCH Documents and the UHC Provider Documents are subject to disclosure because trade secret status is lost where a private corporation voluntarily enters into a contract to administer public funds, and because the public interest warrants disclosure of the documents.

We reject SGPA and MAG's broad assertion that the trade secret exemption should not apply because United HealthCare voluntarily entered into a public contract to administer public funds. A private entity's voluntary participation in a government contract does not, standing alone, strip the entity's documents of their trade secret status. See *Douglas Asphalt Co.*, 282 Ga. App. at 551 (3). Moreover, SGPA and MAG's argument is vitiated by the existence of the statutory trade secrets exemption itself, which is intended to prevent the disclosure of trade secret information in documents that have already met the threshold requirement of being public records due to their connection to a government program or activity. See OCGA § 50-18-72 (b) (1).

We likewise are unpersuaded by SGPA and MAG's contention that the public interest warrants disclosure of the documents. The public policy of this state against the disclosure of trade secret information, as evidenced by the plain language of OCGA § 50-18-72 (b) (1), constitutes the General Assembly's determination that trade secret protection outweighs any greater public benefit in disclosure. See *Richmond County Hosp. Auth. v. Southeastern Newspapers Corp.*, 252 Ga. 19, 20-21 (1) (311 SE2d 806) (1984) (holding that appellant's general public policy argument was trumped by the plain language of OCGA § 50-18-72).

(d) The only remaining question is whether the DCH Documents and the UHC Provider Documents meet the two-part test for trade secrets as a matter of law. But, as previously indicated, the trial court did not resolve this issue, given the trial court's erroneous legal conclusion that the documents were not protected from disclosure by the trade secrets exemption because they were not "required by law to be submitted to a government agency." Under these circumstances, we vacate the trial court's grant of summary judgment in

favor of SGPA and MAG, and its denial of summary judgment in favor of United HealthCare. We remand for the trial court to consider in the first instance whether the DCH Documents and the UHC Provider Documents meet the two-part test for trade secrets as a matter of law or whether a genuine issue of material fact exists as to that issue. See, e.g., *City of Gainesville v. Dodd*, 275 Ga. 834, 838-839 (573 SE2d 369) (2002); *Coleman v. DaimlerChrysler Svcs. of North America*, 276 Ga. App. 336, 339-340 (623 SE2d 189) (2005).

*Judgment affirmed in part, vacated in part, and case remanded. Ruffin, P. J., and Andrews, J., concur.*

DECIDED JULY 28, 2008 — 

*Kidd & Vaughan, Woodrow W. Vaughan, Jr.,* for appellants.
*Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Michelle Townes, Kathryn A. Fox, Assistant Attorneys General, Phears & Moldovan, Victor L. Moldovan, Donald J. Palmisano, Jr.,* for appellee.